Filed 1/21/14  P. v. Nochez CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>NILTON NOCHEZ,<br><br>    Defendant and Appellant. | B244256<br><br>(Los Angeles County<br>Super. Ct. No. BA392163) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Clifford L. Klein, Judge.  Affirmed.

Gregory Demirchyan, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Nilton Nochez, convicted of assault with a deadly weapon (Pen. Code, § 245, subdivision (a)(1)) and possession of controlled substance paraphernalia (former Health & Saf. Code, § 11364, subd. (a)(1)), appeals his assault conviction on the ground that the court committed reversible error when it admitted prior out-of-court statements made by two witnesses. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Nochez was charged with assault with a deadly weapon and possession of controlled substance paraphernalia after an altercation he had with his mother Ana Mejia and his seventeen-year-old half-brother, Kevin E. Prior to trial, he pleaded no contest to the second count.

A. Kevin E.

On December 6, 2011, Kevin E. told the police that during a heated argument with Mejia, Nochez followed Mejia into her bedroom and pushed her against the wall; that Kevin E. attempted to intervene in the dispute by standing between Mejia and Nochez; that this upset Nochez; that Nochez took a box cutter and placed the blade from the cutter against Kevin E.'s neck; that Nochez told Kevin E., "I'm going to stab you"; that he pushed Nochez's hand out of the way as Nochez slashed out with the blade; that Kevin E. raised his left arm to protect himself; and that Nochez sliced Kevin E.'s left arm.

At the preliminary hearing, however, Kevin E. testified that the cut was an accident: Nochez was waving a box cutter blade at him, and "then I came close to him, so he didn't know what was happening. So it's kind of like he cut me by accident on the arm."

At trial, Kevin E. continued to describe a family altercation: he testified that Nochez and Mejia had become involved in an argument, that Nochez was screaming at Mejia, and that he had intervened to quiet Nochez. Nochez did not calm down, but instead went into the kitchen and began throwing items around. Mejia and another one of her sons called the police. Kevin E. testified that he then cut himself along the left arm

2

with Nochez's box cutter because he was afraid of Nochez and believed that this was "the only way I knew he was going to get away from me." He cut himself so that the police would arrest Nochez.

The prosecutor questioned Kevin E. about prior statements he had made, and Kevin E. acknowledged that he had told police on the day of the incident that Nochez had cut him. The prosecutor began asking questions about details of the account Kevin E. had given the police, and defense counsel objected that it was inappropriate impeachment. The court responded that the evidence was admissible "as a prior consistent statement," and said that it would permit the prosecutor to elicit evidence concerning the context of the statement. Thereafter, in response to the prosecutor's questions, Kevin E. admitted that he had told the police that Nochez cut him with the box cutter and confirmed other details of the account he had previously given the police. Kevin E. also acknowledged that on December 26, 2011, his brother called the police again, causing the police to come to the home. At that time, Kevin E. again told the police that Nochez had cut him on the arm with a box cutter. He told a detective about the argument, his attempt to intervene, and Nochez's slashes at him with the box cutter, causing cuts to Kevin E.'s left forearm.

Kevin E. further acknowledged in response to the prosecutor's questions that he had testified at the preliminary hearing that during the argument, Nochez screamed at him and threw things. As the prosecutor began to run through the questions and answers given by Kevin E. at the preliminary hearing, defense counsel offered to stipulate to the content of the preliminary hearing testimony. At sidebar, the court said to the prosecutor, "You've already impeached him with what he told the officer. This is the third time. You're sort of going over—." The prosecutor emphasized that the preliminary hearing testimony was under oath, but agreed to limit his questions about the testimony to two minutes. Resuming testimony, Kevin E. admitted that he had testified at the preliminary hearing that the cut was an accident. Kevin E. acknowledged that he had previously testified at the preliminary hearing that Nochez put the box cutter to his neck and threatened to cut him.

3

Kevin E. testified that he cared about his older brother and did not want to get him into trouble.

On cross-examination, Kevin E. again testified that he had cut himself. He acknowledged that he had testified previously that it was an accident, but that he had not told the police that when he first spoke with them. He agreed that he had now given three different accounts of what had occurred.

B. Mejia

Mejia, the mother of Nochez and Kevin E., also testified at trial. She described an argument she had with Nochez and said that Kevin E. came into the room when Nochez raised his voice. Nochez and Kevin E. began arguing. According to Mejia, her sons went into the kitchen. She did not see what Nochez did there, and she did not see him throw or break anything.

The prosecutor then played a recording of a 911 call in which Mejia told the 911 operator that Nochez had "broke[n] the table" and "put the food in the wall." Mejia agreed that she had made that call and that those things had happened, but claimed that this was a different day than the day that Kevin E. was cut. On the day that Kevin E. was cut, she witnessed Kevin E. telling Nochez, "No, Nilton, look what you did to me. Oh, look at what you did to me, dude." Nochez responded, "You know that you cut yourself." The police came to the home shortly after Kevin E. was cut. She did not tell them that she heard Nochez tell Kevin E. that he had cut himself. Kevin S. told her a week after he was cut that he had done it himself; she did not tell the police.

Mejia denied speaking with the police after Nochez was arrested. She denied being interviewed by telephone in Spanish by an officer named Cardenas. She also denied telling Cardenas on December 27 that Nochez argued with her in the kitchen because he was trying to sleep but there was too much noise.

The prosecutor asked whether she told Cardenas that Nochez pushed her, and defense counsel objected on the grounds that this was improper impeachment. The court overruled the objection, and Mejia denied telling Cardenas that Nochez pushed her.

4

Mejia also denied that she had told Cardenas that Nochez followed her into her bedroom. When the prosecutor asked whether she had told Cardenas that Nochez pointed his finger at her and began to yell when Kevin E. entered the room, she said, "I don't know if it was the 27th, the day that—I do remember speaking to an officer. There were two officers that arrived, but I don't know if that was on the 27th of December. I only remember that when they came to take the report for Kevin, they had asked me what happened and, I had said that Nilton had pointed at me with his finger, and that that is why Nilton and Kevin started to argue." She said she had told Cardenas that Nochez pulled out a yellow box cutter and cut Kevin E. with it, then fled the home.

The prosecutor asked Mejia whether she had told Cardenas these things after Nochez was arrested, and she answered, "After they arrested, no. That was the same day. No, because that was the day that—well, the same day Nilton left the house. He was not arrested that day." The prosecutor asked, "So you're saying that you did not say those things to an Officer Cardenas after Nilton was arrested?" Mejia responded, "I just don't know what officer and I don't know what officer made the report. I'm just talking about the day that I told an officer—I told him about what had happened, and that was the day that the report was taken. But on that particular day, Nilton had not been arrested. He wasn't arrested until the 26th of December." "And after the 26th of December," the prosecutor asked, "did you tell an officer who interviewed you on the phone in Spanish all of those things that I just asked you?" Mejia responded, "Wow. Well, no. I don't remember talking to an officer afterwards by phone."

Andres Cardenas later testified that he had spoken with Mejia over the telephone on December 27, 2011, and that she had told him that Nochez took out a knife and cut Kevin E. The jury convicted Nochez of assault with a deadly weapon. Nochez appeals.

**DISCUSSION**

**I.     Introduction of Prior Statements by Kevin E.**

Nochez argues that the trial court erred when it permitted the prosecution to impeach Kevin E. with prior statements he made to the police concerning the incident.

5

Nochez acknowledges that the statements Kevin E. made to the police regarding how he sustained his injuries were admissible under Evidence Code section 1235 because they were inconsistent with the account he gave at trial of how he was injured, but Nochez contends that other prior statements elicited by the prosecutor—specifically, that Kevin E. had told the police that Nochez began to argue with Mejia; that the argument began in the bedroom; that Kevin E. attempted to intercede on his mother's behalf; and that Nochez had a box cutter—were not admissible as prior inconsistent statements or as prior consistent statements and were therefore improperly admitted.

Assuming for the purposes of argument that the trial court admitted prior statements not encompassed within Evidence Code sections 1235 (prior inconsistent statements) or 1236 (prior consistent statements), Nochez has not established any prejudice from the admission of these statements. As Nochez acknowledges, state law errors in the admission of hearsay are reviewed under the standard of *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Duarte* (2000) 24 Cal.4th 603, 618-619.) Nochez contends that there was a reasonable probability that absent the admission of these statements the result of the trial would have been more favorable to him because "the extrajudicial narratives were given so much importance and attention that they, for all intent[s] and purposes, displaced and overshadowed [Kevin E.'s] version of the facts as he testified on the stand, a version that strongly undermined the prosecution's theory regarding how [Kevin E.] sustained his injuries," leading to a reasonable possibility that the jury was so preoccupied by these statements that it did not give due consideration to Kevin E.'s assertion at trial that the injuries were self-inflicted. This speculation as to jury preoccupation finds no support in the record. As Nochez admits, Kevin E.'s prior statements to the police that the argument was initially between Nochez and Mejia in the bedroom, that Kevin E. came to his mother's aid, and that Nochez had a box cutter were not inconsistent with Kevin E.'s account at trial. Because the prior statements of which Nochez complains were consistent with Kevin E.'s trial testimony and concerned not the actual injury to Kevin E. but the circumstances preceding it, there is no reasonable possibility that these statements presented a significant diversionary prospect to the jury

6

or that Nochez would have obtained a better result had these statements not been admitted into evidence.

Nochez further argues that the admission of the prior statements was prejudicial because the prior statements conferred a credibility advantage on Kevin E.'s account to the police that Nochez deliberately cut him: that "the extrajudicial content" gave his statement to the police the advantage "of being placed within a narrative context that gives it seeming credibility and believability simply because the statement is part of a story that is both structurally coherent and given a great deal of importance and attention." Absent these statements, Nochez contends, the varying accounts he gave would have been on an equal footing, leaving the jury to determine what happened on the basis of Kevin E.'s credibility. It is therefore reasonably possible, Nochez argues, that the jury would have believed Kevin E.'s trial testimony were it not for the extrajudicial accounts that were presented at trial "and that likely prevented the jury from engaging in the kind of reasoning and deliberation that is directed at gauging the credibility of the witness." This argument is unpersuasive, however, because the narrative context of all the accounts that Kevin E. gave was generally consistent—there was an altercation between Nochez and Mejia, Kevin E. became involved, Nochez had a box cutter—and only then do the accounts begin to diverge, with Kevin E. reporting at different times that Nochez cut him deliberately, that Nochez injured him accidentally, and that he (Kevin E.) had cut himself. There is no reason to believe that the extrajudicial statements of which Nochez complains tended to privilege one account of events over another, nor is there any basis in the record for suspecting that these statements in any way hampered the jury in determining this witness's credibility. Nochez has not established any prejudice here.

## II. Introduction of Prior Statements by Mejia

On cross-examination of Mejia, the prosecutor attempted to impeach her testimony that Kevin E. had told her after the incident that Nochez had not injured him but that he had injured himself by questioning her about a conversation she had on December 26 or 27, 2011, with a Spanish-speaking officer named Cardenas. Nochez

asserts that the impeachment was "procedurally inappropriate" for two reasons: first, because Mejia denied speaking with Cardenas, "the prosecutor's query was answered early on, and so he should have moved on to his next question." Second, he contends, the prosecution "was either putting words into Mejia's mouth that she did not in fact say to Cardenas, or if she did say them, they were clearly hearsay." We identify nothing improper about this questioning. Evidence tending to contradict a witness's testimony is relevant for purposes of impeachment. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1025.) Here, the evidence of Mejia's prior statements to Cardenas tended to counter her trial testimony that she was not present in the bedroom when Kevin E. sustained his injuries and that Kevin E. told her that he had cut himself, and the inquiry into her prior inconsistent statements was therefore proper impeachment. Even if there were an error in the questioning of Mejia, moreover, any error was harmless because the same information would have been presented to the jury in any event: Regardless of these questions, her testimony would have been impeached by Cardenas's testimony that Mejia told him over the telephone that Nochez took out a knife and cut Kevin E.

**DISPOSITION**

The judgment is affirmed.


ZELON, J.

We concur:


PERLUSS, P. J.                    SEGAL, J.[*]

---

[*]  Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.